*In re* ALLON.

1. Adoption—Consent—Duress—Misrepresentation—Evidence.
    Finding of circuit judge, on *de novo* trial on appeal from probate court on natural mother's petition to withdraw her consent to adoption of her child on ground of duress and misrepresentation, that the consent was not void because of any duress, misrepresentation, overreaching or physical or mental condition of the mother at time written consent was given *held*, supported by record presented, showing full compliance with statutory provisions (CL 1948 and CLS 1956, § 710.1 *et seq.*).

2. Same—Investigation by County Agent—Statutes.
    Fact that investigation of adoptive home was made by an assistant county agent instead of the county agent herself would not invalidate probate court's order confirming adoption, based on county agent's report, where statute does not require that such investigation be made by the county agent personally and the report made complies with the statute (CLS 1956, § 710.5).

Appeal from Oakland; Holland (H. Russel), J. Submitted January 13, 1959. (Docket No. 54, Calendar No. 47,842.) Decided July 13, 1959.

In the matter of the adoption of Baby Girl Allon, the mother, Nona Holdroyd Allon Hill, withdrew her consent after confirmation of adoption by Alfred James Lewis, Jr., and Jane G. Lewis. Adoption confirmed on rehearing in probate court and on trial in circuit court. Natural mother appeals. Affirmed.

References for Points in Headnotes
[1] 1 Am Jur, Adoption of Children § 36.

*Hugh K. Davidson* and *J. Connor Austin,* for appellant mother.

*Emmett J. Leib* (*Glenn C. Gillespie,* of counsel), for adopting parents.

EDWARDS, J.  In this matter a mother, who at the birth of an infant sought for and consented to its adoption, now seeks return of the child born to her. The record indicates that the first legal proceedings to alter the adoption plan were taken by the mother more than 1 year after the adoption placement, and after a final order of adoption had been entered.  In 2 petitions for rehearing, the mother claims her consent was procured against her will by duress and misrepresentation, and that the adoption proceedings were fatally irregular.

The probate judge who first heard the testimony in the matter currently before us on appeal said in his opinion:

"In any adoption case where the natural mother changes her mind at a later date, or for the first time asserts her desire to have the child at such a late date after the child has been securely placed in an adoptive home, someone's emotions are apt to be adversely affected.  Here the record seems to indicate that the child had been securely placed and is firmly established in a good adoptive home.  Though the court is sympathetic to the viewpoint of the natural mother it nevertheless does appear that she has been guilty of laches in some considerable degree in not asserting her changed viewpoint or disclosing her desire to have her child at a much earlier stage in the proceedings.

"Under the facts shown the court is of the opinion that the adoption was properly and legally consummated, that the statutory steps were complied with and that it would be both unfair and improper

for the adoption to be set aside at this date because such action would be injurious to the child itself.

"An order denying the petition may be entered."

On appeal to the circuit court, testimony was taken *de novo* and the probate court decision was affirmed.

The mother, appellant in this matter, a British citizen, was 32 years old at the time of the birth. She had attended college for 3 years and served 6 years in the British army, apparently in an executive capacity. It appears that the father of the child was killed in an automobile accident in England in October, 1954. Appellant came to the United States and spent that winter in Palm Beach. Around the first of May, 1955, she came to Michigan—residing with a Margaret Evans, in Harper Woods.

Prior to the birth of the baby, appellant arranged for medical care with an obstetrician in active practice in Detroit. The circuit judge found from the testimony heard before him that appellant asked the doctor "to find 'desirable' adoptive parents and a good home for the child." The doctor did make such a plan and the prospective adoptive parents were subsequently investigated by, and approved by, the Oakland county probate court.

The baby was born uneventfully on June 10th, within 3 hours of appellant's admittance to the hospital. Appellant subsequently signed a release in the hospital to allow the prospective adoptive parents to take the child home with them.

On the 3d day after the birth of the baby, appellant was released from the hospital and returned to the apartment in which she had been staying. On that same day, she went to downtown Detroit to the airport terminal to meet her mother, who lived in New York State.

Two days thereafter, on June 15, 1955, appellant went to the probate court in Oakland county, accom-

panied by her mother and Margaret Evans, and executed a formal consent to adoption—a petition for adoption already having been filed by the prospective adoptive parents, who resided in that county. It appears that the names of the proposed adoptive parents were not disclosed to her, nor did she inquire as to them.

On June 16, 1955, the probate court entered an order terminating appellant's parental rights and placing the child in the custody of the proposed adoptive parents, under supervision of the county agent. The child remained in the home of the adoptive parents for over 1 year prior to the filing of a favorable report and recommendation of adoption by the county agent. The final adoption order was entered June 28, 1956—1 month before the initiation of the instant proceedings.

We believe that appellant's second stated question is the major question presented on this appeal:

"2. Was the finding of the trial judge that the consent to adoption was not void because of any duress, misrepresentations, overreaching, or physical and mental condition of the natural mother at the time of signing the consent supported by the evidence?"

Appellant testified at trial that, at the time of the signing of her adoption consent, she was under sedation, ill, and too emotionally disturbed to know what was going on.

The circuit judge dealt with this question as follows:

"This court is of the opinion that the signed consent to adoption by parents, exhibit 4, *is not void because of any duress, misrepresentations, overreaching, or physical and mental condition of the natural mother at the time of the signing of the consent.* The natural mother failed to show that all

or any of the things just mentioned rendered her incapable of knowing what she was doing, or deprived her of her free will to act. The age of the natural mother, her education and training, her experience as an executive officer, all negative the fact that she was under such pressure or restraint that she dared not give vent to her own will, feelings, or desires, in the matter of consent. Neither the testimony of the natural mother nor that of the referee claim that any protest was made by the mother at the time that she was interviewed for 45 minutes and signed the consent. She protested neither by word, deed nor show of emotions. The natural mother had the benefit of her friend Margaret. Far more important and far more significant, she had the benefit of her own mother's presence and advice. Margaret made the appointment with the referee; Margaret and the mother of the natural mother accompanied said natural mother to Pontiac. Certainly, if anyone could have detected that the natural mother was so physically or mentally ill, or so under the influence of the will of others that she should not have been permitted to sign a consent or able to have been interviewed, her own mother should have been the first to recognize such a state and should have protested."

The consent which appellant signed recited that it was executed "without any undue influence, coercion, or constraint."

The probate court referee who took the consent testified as follows concerning that interview:

"*A.* I advised her that when she signed the consent to the adoption she was releasing all of her rights to her child permanently and that when she signed the consent, it was with the understanding that she was doing this voluntarily and willingly.

"*Q.* Now, Miss Hill has claimed here, you heard her on the stand, that she was emotionally, under great mental or emotional strain. I ask you whether or not you saw any indication of that whatsoever?

"*A*. No, I did not, not any indication of what I would consider any apparent disturbance of any sort."

Perhaps not essential to the present result, but persuasive of the actual subsequent change of mind of appellant, is a note, identified as exhibit A, which was sent by appellant to the obstetrician with the check in payment for his services:

*"Dear Doctor*
"I feel I must thank you for everything—I shall be able to think of my little girl growing up happy in a home where she is wanted and loved and I want you to know I am deeply grateful.
                              "Thank you
                              "NONA ALLON"

We are not unmoved by this mother's natural desire to secure the return of a child born to her. But we cannot read this record without agreement with the probate judge that this attitude represents a distinct and belated change of mind on appellant's part. There is not the faintest showing of duress or misrepresentation in this record, nor does it convince us that her signature on the consent was other than her own free and voluntary act under the circumstances which then confronted her.

The whole system of adoption provided by our laws would be largely destroyed if a final order of adoption, regularly entered, as here, in full compliance with statutory provisions (CL 1948 and CLS 1956, § 710.1 *et seq.* [Stat Ann 1943 Rev and Stat Ann 1957 Cum Supp § 27.3178(541) *et seq.*]), could be set aside because of a change of circumstances or mind on the part of the originally-consenting mother. We hold the consent to adoption in this case valid and beyond the power of appellant to revoke at the point of her change of mind. *Gonzales* v. *Toma,* 330 Mich 35.

Appellant's other question on this appeal is as follows:

"1. Was there an investigation by the county agent or probation officer or by a placement agency in keeping with the statutory requirements in adoption proceedings as set forth in CLS 1956, § 710.5 (Stat Ann 1957 Cum Supp § 27.3178[545])?"

The circuit judge answered this affirmatively, commenting:

"The statute, although specifically complied with in this case, cannot be construed to mean that the county agent must personally do all of the work required in such matters. Work must be delegated in populous counties such as Oakland."

This record discloses that the consent was taken before a duly appointed referee of the Oakland county probate court, as authorized by statute (CLS 1956, § 710.3 [Stat Ann 1957 Cum Supp § 27.3178 (543)]); that an order for adoptive investigation was entered by the probate judge, and that a report of that investigation was then filed by the county agent. It appears that the complaint is that the county agent did not make the investigation personally. We find no statutory requirement that she do so in person, as opposed to accomplishing same through other county employees under her direction. The adoption investigation report was based upon a written report made by an assistant county agent. The report filed complies with the statute (CLS 1956, § 710.5 [Stat Ann 1957 Cum Supp § 27.3178(545)]).

"For us to pry with legal diligence at the technical crevices in old cases which pertain to child custody and adoption matters could spring open a Pandora's box of troubles." *Harmsen* v. *Fizzell,* 351

Mich 86, 106. Rehearing granted March 4, 1958; reversed 354 Mich 60.

Affirmed.

KELLY, SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.

DETHMERS, C. J., and CARR, J., concurred in the result.